Jones *vs.* The State.

---

JONES *vs.* THE STATE OF GEORGIA.

1. Where the remitter from this court was filed in the clerk's office below to be entered on the minutes, but was lost before being so entered, if the court below had a certified copy of the full decision of this court, ruling the points in the case and granting a new trial, he could order such certified copy to be spread upon the minutes, and that the case proceed.

JACKSON, C. J., dissenting.

(*a.*) That an order granting a defendant in a criminal case a first new trial may have been irregularly entered, is no reason why he should, after a second verdict, have still another new trial.

2. The charge in this case was founded on the facts, and was proper.

3. The verdict is supported by the evidence.

SPEER, J., concurred *dubitante.*

Criminal Law.   Judgments.   Practice in Superior Court.

Practice in Supreme Court. Charge of Court. Before Judge SNEAD. Richmond Superior Court. April Term, 1881.

Reported in the decision.

WM. E. JACKSON, Jr.; F. W. CAPERS, Jr.; M. P. CARROLL, for plaintiff in error.

CLIFFORD ANDERSON, attorney general; BOYKIN WRIGHT, solicitor general, for the state.

CRAWFORD, Justice.

1. Upon the trial of this case in the court below, the remitter having been lost, the following order was passed and is now the first question made for our adjudication:

"It appearing to the court that the decision of the supreme court has been rendered in the above case granting a new trial, and that the above decision is in manuscript duly certified by the seal of the clerk of the supreme court; and it further appearing that the remitter was in the custody of M. P. Carroll, one of the counsel for defendant, and by him entrusted to the official reporter of this court for transmission to the clerk of the same, and it appearing that said reporter handed the same to the clerk of this court, and that said remitter has been misplaced and was not entered on the minutes, it is ordered that said decision of the supreme court be entered of record on the minutes, and that the cause proceed."

As the foregoing order shows, this case had been brought up by writ of error, the judgment reversed, and a new trial ordered. The remitter was forwarded as the law directs to the attorney in whose favor the decision was rendered, it was deposited with the clerk of the superior court, but was misplaced and not entered on the minutes. The transcript of the record in this case shows that the judge had the full decision of this court as delivered from the bench,

deciding every ground of error complained of in the bill of exceptions,. and ruling that for the errors committed the judgment must be reversed and a new trial granted. Section 4285 of the Code declares that the decision of the court shall be certified by the clerk to the court below, under the seal of the supreme court, and shall be carried into effect by the superior court. This decision had been so certified, and the judge below had it spread in full on his minutes and proceeded to try the case.

The remitter contained exactly the same thing when in a condensed form it recited, "that the judgment of the court below be reversed, on the ground that the court erred in refusing a new trial." It is not claimed that this is the usual mode, but I hold, SPEER, J., concurring, that although unusual it is not illegal, and when so certified and sent down it is as binding upon the judge as when stated by the clerk in the remitter. But the real question, after all, under the special facts of this case is, even if irregular, when no right of the party is affected thereby, does it afford any ground for a second new trial, when by the act of the court below he got the benefit of the new trial awarded him by the judgment of this court, although the usual remitter was misplaced? We think not, and upon that ground we put our judgment on this assignment of error.

2. The second assignment of error relied upon is that the judge gave the following charge to the jury:

"In the language of our supreme court, while it is true that a man ought not to be punished for an offence of which he is guiltless, the jury ought not to pronounce the accused innocent for want of positive evidence of his guilt. Circumstances satisfactorily proved which point to his guilt, and which are irreconcilable with the hypothesis of his innocence, or which require explanation from him, and may be explained by him if he be innocent, but which are not explained, ought to satisfy the conscience of every juror and justify him before that forum for rendering a verdict according to their almost unerring indication.

" Any other rule will expose society to the ravages of the most depraved men. The most atrocious crimes are contrived in secret, and are perpetrated generally under circumstances which preclude the adduction of positive proof of the guilt of the persons who commit them. But it must be remembered that while this is the case, circumstances which would authorize a bare conjecture of the guilt, are not sufficient to warrant a conviction."

The well recognized rule is that the judges should charge such legal principles as are applicable to the facts of the particular case to be passed on by the jury. Under the testimony in this case, we see no error in giving the charge complained of ; the facts warranted it, and the judge was justified in giving it.

3. The last assignment of error is that the verdict is strongly and decidedly against the evidence and without sufficient evidence to support it.

It is shown that the deceased was a merchant living in the country, slept in his store, was to have gone to Augusta at 4 o'clock on the morning of the 16th of December, 1879; the prisoner agreed to go with him, and that they might be sure to be ready, the prisoner was to sleep in the store the night before with deceased and wake him up to take the train.

The next day when deceased's brother went to the store, the doors were all locked and the windows fastened; upon opening it he saw his brother's corpse, blood on the floor, and a hatchet near his head. They had sold prisoner flour in sacks; one of the kind sold to him he found in the store stained with blood, and prisoner's name written in his own handwriting upon it. He saw his brother's account book opened at the account of Anderson Jones, and the account marked " paid," in his brother's handwriting; it had not been paid the evening before at 7 o'clock when he left the store. The prisoner received about $11.00 as a railroad hand when he was paid off that day; had received $2.00 before, and said that he had no money; the

back-door of the store was locked with a spring; could be opened on the inside without a key, but required one on the outside. Three pieces of brown wrapping paper were found near deceased marked $27.00, $28.00 and $20.00, but contained no money.

The prisoner left the house where he was staying that night, saying that he was going to deceased's store to pay him, and asked for a sack to put something to eat in, and this sack witness Davis took to be the same sack he gave him, it being the one found near the body of deceased. The last time witness, Sims, saw the deceased was at 8 o'clock the night of the murder, and he told him that he was then looking for Anderson Jones, prisoner, to come and pay his account; heard Jones tell deceased that he would stay all night with him. Another witness identifies some paper and a black pencil as prisoner's, picked up on the floor in deceased's store; the paper had prisoner's name written on it; prisoner admitted that he had gone to the store at 10 o'clock that night and paid his account.

It was shown that although he had no money when he was paid off, yet he appeared in Augusta early in the morning after this murder and purchased $31.00 or $32.00 worth of goods, together with a trunk, which were found at the house of Ella Sims, where the prisoner told a policeman that it might be found. The articles, coat, vest, pants, shirt, shoes, collars, ribbons, scarf, jewelry, and soap, were identified as those sold to prisoner on that morning, and the merchant further testified that after paying him for these goods he knew of his having $9.00 left. Prisoner told witness, King, that he would pay $50.00 for two witnesses, and located a place in a wood-yard where he could dig up $60.00 to pay them, though the witness did not find it.

The prisoner in his statement makes no allusion to any of these matters—simply denies knowing anything of the murder; that he went to the store and paid his account that night; promised to go and wake up deceased, but

Jones *vs.* The State.

did not wake in time to do so, and took the train to Augusta; denied any other promise to deceased.

This testimony was deemed by two juries sufficient to convict this plaintiff in error of murder without giving him any recommendation to mercy. The judge presiding has not seen fit to commute the punishment. Perhaps it may be that the confessions made to witness, Moncrief, in the presence of Barnes and others, and testified to by them, in his opinion made it a conviction not founded solely on circumstantial testimony, and for that reason he did not do so. Be that, however, as it may, the law lodges this discretion with the judge and jury, and the testimony being sufficient to support the verdict, we cannot hold that this last ground in the motion for a new trial is well taken.

Judgment affirmed.

JACKSON, Chief Justice, concurred, because the defendant in the court below obtained what he asked for, to-wit, a new trial. He cannot recognize the practice of entering the opinion of a judge of this court upon the minutes of the court below as the judgment of this court. The *remittitur* contains the judgment, and, if lost, a second will be issued on application by the clerk of this court.

SPEER, Justice, thinks the conviction was founded solely on circumstantial evidence, and would prefer referring the punishment back to the court below for the exercise of his discretion as to commuting the same to imprisonment for life, but as neither of the other judges will join him, he reluctantly concurs.